FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Aug 18, 2023**

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KOREY L., | No. 1:21-CV-03066-RHW |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | **ECF No. 13, 14** |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14.  Attorney D. James Tree represents Korey L. (Plaintiff); Special Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of Social Security (Defendant).  This matter was referred to the undersigned magistrate judge for issuance of a report and recommendation.  ECF No. 18.  After reviewing the administrative record and the briefs filed by the parties, the Court **RECOMMENDS** Plaintiff's Motion, ECF No. 13, be granted and Defendant's Motion, ECF No. 14, be denied.

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in March and November 2011, alleging onset of disability beginning January 25, 1990, due to impairments including spina bifida and right leg injury with nerve damage.  Tr. 21, 59, 61, 77, 79, 196-24.  The applications were denied initially and upon reconsideration, and an Administrative

1    Law Judge (ALJ) held a hearing in December 2013 and issued an unfavorable
2    decision on January 2, 2014.  Tr. 18-42, 43-58, 121-32, 137-47.  The Appeals
3    Council denied Plaintiff's request for review.  Tr. 1-6.  Plaintiff filed an action in
4    district court and on June 21, 2016, this Court granted the Parties' stipulated
5    motion for remand, reversing and remanding the claim for further proceedings.  Tr.
6    556-57.

7        Another ALJ held a hearing on September 12, 2017 and issued an
8    unfavorable decision on May 15, 2018.[1]  Tr. 830-60, 878-02.  Plaintiff again filed
9    an action in district court, and on April 29, 2019 this Court reversed and remanded
10    Plaintiff's claim for further proceedings "so the ALJ can weigh Dr. Pellicer's
11    sitting restrictions anew and determine what weight to assign them"; and "having
12    already decided remand is necessary, the Court instruct[ed] the ALJ to reevaluate
13    the opinions of the other medical sources in light of the entire record and Plaintiff's
14    subjective symptom testimony," and "to the extent the ALJ finds that the record
15    supports additional impairments, he shall also reevaluate whether Plaintiff's
16    impairments meet or equal listed criteria."  Tr. 914-15.

17        Pursuant to the remand order, on February 2, 2021, ALJ C. Howard Prinsloo
18    held a hearing.  Tr. 861-77.  On March 2, 2021, the ALJ issued the third
19    unfavorable decision on Plaintiff's claim.  Tr. 798-27.  The Appeals Council did
20    not assume jurisdiction of the case, and the ALJ's March 2, 2021 decision became

21

22    [1] At the 2017 remand hearing, Plaintiff amended his alleged onset date and
23    requested a closed period of disability from March 8, 2011 through December 31,
24    2014.  Tr. 471, 495, 498, 882.  Although the requested closed period of March 8,
25    2011 through December 31, 2014 was confirmed by Plaintiff's counsel at the 2021
26    hearing, throughout the ALJ's 2021 decision the requested closed period is
27    reported to begin nearly a year earlier, with onset of April 1, 2010.  *See* Tr. 801-
28    818, 864, 905.

REPORT AND RECOMMENDATION . . . - 2

the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on May 12, 2021.  ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),

REPORT AND RECOMMENDATION . . . - 3

416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 2, 2021, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.  Tr. 798-27.

At step one, the ALJ found Plaintiff, who meets the insured status requirements of the Social Security Act through December 31, 2023, had not engaged in substantial gainful activity between April 1, 2010 and December 21, 2014, the requested closed period of disability.[2]  Tr. 803.

At step two, the ALJ determined Plaintiff had the following severe impairments: spina bifida; history of right tibia fracture with right lower extremity nerve damage; and right knee impairment.  *Id*.

---

[2] As noted above, Plaintiff requested a closed period of disability beginning nearly a year later, when he stopped working, alleging disability from March 8, 2011 through December 31, 2014.

REPORT AND RECOMMENDATION . . . - 4

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 807.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) during the period at issue, and found he could perform light work with the following nonexertional limitations:

> [Plaintiff] could stand and walk for a total of 2-4 hours in an 8-hour workday with no operation of foot controls and no concentrated exposure to vibration.  He must have avoided climbing, balancing, stooping, kneeling, crouching, and crawling.

Tr. 807.

At step four, the ALJ found Plaintiff was unable to perform past relevant work.  Tr. 817.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the job of small products assembler and the job of nut and bolt assembler.  Tr. 817-18.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from April 1, 2010 through December 31, 2014.  Tr. 818.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and Title XVI of the Social Security Act.  The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review (1) whether the ALJ

properly evaluated the medical opinion evidence; (2) whether the ALJ properly evaluated Plaintiff's symptom complaints; and (3) whether the ALJ conducted a proper step-three analysis.[3]  ECF No. 13 at 2.

# DISCUSSION

## A.    Medical Opinions

Plaintiff contends the ALJ erred in his analysis of the medical opinions of Marie Ho, M.D.; Mary Pellicer, M.D.; and Anthony Frances, M.D.  ECF No. 13 at 8-22.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.*  The opinion of

---

[3] Plaintiff combines the listings and medical opinion issues, but they are separated here for clarity.

a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041. An ALJ may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted).

### 2019 Remand Order, Law of the Case and Rule of Mandate

On April 29, 2019, this Court reversed and remanded Plaintiff's claim for a second time, holding that the ALJ erred in assessing the medical opinion of Dr. Pellicer.[4] Tr. 904-16. The claim was remanded for further proceedings "so the ALJ can weigh Dr. Pellicer's sitting restrictions anew and determine what weight to assign them"; and "having already decided remand is necessary, the Court instruct[ed] the ALJ to reevaluate the opinions of the other medical sources in light of the entire record and Plaintiff's subjective symptom testimony," and "to the extent the ALJ finds that the record supports additional impairments, he shall also reevaluate whether Plaintiff's impairments meet or equal listed criteria." Tr. 914-15.

The "law of the case" doctrine prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case, primarily in the name of efficiency. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The rule of mandate is similar to, but broader than, the law of the case doctrine. The rule provides that any "district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other

---

[4] There was a prior stipulated remanded in 2016 for reassessment of Dr. Ho's opinion, as well as reconsideration of Plaintiff's RFC and ability to perform past relevant work with a (as determined by the 2014 ALJ) sedentary RFC. Tr. 556-57, 570-72.

REPORT AND RECOMMENDATION . . . - 7

1  than executing it." *Id.* at 567-68.  In *Stacy*, the Ninth Circuit held that both of these
2  appellate principles apply in the Social Security context.  *Id.* at 567.
3      In the 2021 decision, the ALJ concluded that "the sole error identified by the
4  court was the opinion by Dr. Pellicer, specifically the May 2018 decision's
5  rejection of the assessed sitting limitation of 'less than 6 hours' in a workday and
6  need for frequent breaks.'" Tr. 813.  The ALJ concluded, therefore, that "it was on
7  the basis of Dr. Pellicer's assessment, if accepted, that the court instructed further
8  consideration of other opinions, the claimant's allegations, and all listed
9  impairments." Tr 814.  The ALJ reevaluated Dr. Pellicer's opinion concerning
10 Plaintiff's ability to sit, and "overall . . . [did] not give much weight to Dr.
11 Pellicer's opinion regarding Plaintiff's ability to sit for less than six hours and the
12 need for more frequent breaks." Tr. 816.  The ALJ concluded that because he did
13 not accept Dr. Pellicer's opinion, he did not need to reconsider the other opinions
14 because "no other errors in regards to the other opinions were identified" by the
15 Court.  Tr. 814.
16     Plaintiff contends the order to reassess the other medical opinions was not
17 dependent on whether the ALJ gave more weight to Dr. Pellicer or accepted her
18 opinion, and that the ALJ violated both the letter and the spirit of the remand order
19 by failing to reevaluate the other medical opinions.  ECF No. 13 at 9-10.
20 Defendant contends that the ALJ evaluated the opinions again and drew the same
21 conclusions, which "is not surprising because the Court identified no error in the
22 2018 analysis" aside from Dr. Pellicer's opinion.  ECF No. 14 at 11.  Defendant
23 also contends that because substantial evidence supports the ALJ's analysis of the
24 medical opinions, the court should affirm.
25     The Court finds the ALJ failed to follow the remand order by declining to
26 reevaluate the medical opinion evidence.  In the remand order, the Court identified
27 and discussed an error in the prior ALJ's findings in assessing Dr. Pellicer's
28 opinion, then explained that as it had "already decided remand [was] necessary"

REPORT AND RECOMMENDATION . . . - 8

based on that error, the ALJ was to reevaluate the other medical opinions upon remand; the Court therefore did not reach the other issues raised by Plaintiff.  Tr. 915.  Instead of reevaluating the medical opinions, however, the ALJ concluded that "it was on the basis of Dr. Pellicer's assessment, *if accepted*, that the court instructed further consideration of other opinions," and he therefore adopted the 2018 ALJ's reasoning for all other medical opinions, copying the 2018 decision almost in its entirety.  *Compare* Tr. 812-13 with Tr. 891-92.  This Court ordered the ALJ to reevaluate the medical opinion evidence, and he declined.  This is reversible error.  As Defendant argues substantial evidence supports the ALJ's 2018/2021 findings, however, and that any error was harmless, the Court proceeds to address the ALJ's analysis of the medical opinion evidence.  Plaintiff argues that the ALJ's error in failing to assess the medical opinions was not harmless, as the opinions of Dr. Ho and Dr. Francis compel disability and the ALJ failed to provide specific and legitimate reasons to discount them.  ECF No. 13 at 10-15.

    *1.  Dr. Pellicer*

       On January 9, 2012, Dr. Pellicer performed a consultative evaluation and rendered an opinion on Plaintiff's level of functioning.  Tr. 414-22.  Dr. Pellicer diagnosed him with chronic right leg pain with weakness, leg length discrepancy, and limited ankle range of motion status post growth plate fracture; Russell Silver syndrome with curved pinkies, short stature, and left foot and leg size discrepancy; spina bifida occulta with chronic back pain; myopia; possible depression; and insomnia secondary to pain, possibly restless leg syndrome and depression.  Tr. 419.  Dr. Pellicer recommended evaluation for orthosis for gait correction and follow up with a primary care provider.  *Id.*  Dr. Pellicer opined Plaintiff was able to stand and walk for four to six hours in an eight hour day "with more frequent breaks due to chronic leg pain, weakness and abnormal gait"; he was able to sit for "less than [six] hours in an [eight] hour day with more frequent breaks due to chronic back pain"; he need[ed] to be evaluated for an orthosis to correct his gait

and his leg length discrepancy; and he would be capable of lifting and carrying 20 pounds occasionally and ten pounds frequently "due to chronic back, right leg pain, weakness and abnormal gait"; he could bend and squat occasionally due to chronic back and leg pain and weakness; and he should not drive. Tr. 419-20. The ALJ did "not give much weight" to Dr. Pellicer's opinion. Tr. 816.

Pursuant to the remand order, the ALJ indicated he revaluated Dr. Pellicer's opinion regarding Plaintiff's ability to sit and found it "not entirely supported by the overall record." Tr. 814. First, in terms of Dr. Pellicer's assessment of his ability to sit for less than six hours with a need for more frequent breaks due to back pain, the ALJ noted that "the court indicated that the May 2018 decision failed to explain how the examination findings/observations were not supportive of her opinion" and while "the court's point is acknowledged . . . the converse is equally true in support of her assessment as well"; the ALJ then concluded Dr. Pellicer failed to provide adequate supporting discussion and evidence for her opinion because she "never tested or otherwise evaluated the duration over which he could sit within an 8-hour workday," and "the physical examination and interview certainly did not last for 8 hours, and nowhere did she connect her assessment for less than 6 hours [of sitting] or a need for breaks to actual observations or examination findings." Tr. 814.

Plaintiff points out that the Agency purchased this consultative examination to assess disability and Plaintiff's functional limitations, and there is nothing in the regulations or caselaw indicating the opinion of a consultative examiner is dependent on the length of time she examined Plaintiff. ECF No. 13 at 15-16 (citing 20 C.F.R. §§ 404.1517, 404.1519, 404.1519a). Defendant does not defend the ALJ's reasoning here. ECF No. 14 at 15-18. Further, as discussed *supra*, under the rule of mandate the ALJ is not to "vary or examine that mandate for any purpose other than executing it." *Stacy*, 825 F.3d at 567-68. Here, the ALJ "acknowledged" then proceeded to disagree with the Court's findings. Tr. 814.

The ALJ also concluded Dr. Pellicer failed to provide adequate supporting discussion and evidence for the sitting limitations and more frequent breaks.  Tr. 814.  An ALJ may reject a medical opinion if it is conclusory, inadequately supported, or not supported by the record.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Without the ALJ offering more than his stated conclusions, however, the Court is unable to meaningfully review whether the ALJ's interpretation of the evidence is reasonable.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding).

Here, the ALJ disagreed with the Court's findings in the remand order and concluded that Dr. Pellicer failed to provide adequate supporting discussion and evidence for her opinion.  Tr. 814.  Dr. Pellicer explained, however, that Plaintiff reported a history of back pain related to his diagnosis of spina bifida as a child, and that he "now complains of shooting pains in his mid and low back [with] pain at 9/10."  Tr. 415.  Dr. Pellicer also documented objective findings upon physical exam including back "tender[ness] in the lower thoracic upper lumbar region in the region of the waist" and she observed he had decreased range of motion in his back.  Tr. 417.  The ALJ concluded, however, without citation to the record or other medical opinion, that Dr. Pellicer's objective findings upon exam were only "mild," and that her opinion regarding sitting limitations was entitled to little weight because it was based primarily on Plaintiff's self-reports.  Tr. 814.  The Ninth Circuit in *Ghanim* contemplated that medical sources rely on self-reports to varying degrees, however, and held that an ALJ may reject a medical source's opinion as based on unreliable self-reports only when the medical source relied "more heavily on a patient's self-reports than on clinical observations."  *Ghanim v.*

*Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014). There is no evidence Dr. Pellicer did so here; records of her evaluation indicate she performed a thorough physical exam, including documentation of objective findings of Plaintiff's back upon exam, and she noted his history of spina bifida along with his subjective reporting of current symptoms/pain. Tr. 415-19. Further, while concluding that Dr. Pellicer's observations/objective findings were insufficient, the ALJ failed to address the fact that other providers, including Dr. Ho, discussed *infra*, also included limitations in sitting due to back impairment with pain in the assessment of Plaintiff's functioning. As Plaintiff points out, the ALJ also found spina bifida was a severe impairment. ECF No. 13 at 18; *see* Tr. 803. The ALJ's finding that Dr. Pellicer failed to provide adequate supporting discussion and evidence for her opinion is not supported by substantial evidence.

Next, the ALJ repeated the same reasoning used in the 2018 ALJ's decision to discount Dr. Pellicer's opinion, even though this reasoning was rejected by this Court in 2019. "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy,* 825 F.3d at 567, (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). The doctrine of the law of the case "is concerned primarily with efficiency and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy,* 825 F.3d at 567. Here, the ALJ discounted Dr. Pellicer's opinion in 2021 because Plaintiff had mild decrease in range of motion. Tr. 814. In the 2019 remand order, this Court noted the 2018 ALJ reworded Dr. Pellicer's finding of "decreased" back range of motion to "nearly normal" and also "failed to logically articulate how this failed to support Dr. Pellicer's restrictions on sitting." Tr. 912-13. Similarly, in the 2021 decision the ALJ explained that the decreased range of motion observed by Dr. Pellicer in Plaintiff's back was only "mild," without citation to the record or another medical

REPORT AND RECOMMENDATION . . . - 12

opinion to support this conclusion, and as already discussed by this Court in 2019, there is again no articulation of how it is contrary to the physician's opinion of limits on sitting.  Tr. 814; *see* Tr. 912-13.  Plaintiff also contends that "as a lay person, an ALJ is simply not qualified to interpret raw medical data in functional terms."  ECF No. 13 at 12 (citing *Padilla v. Astrue*, 541 F. Supp, 2d 1102, 1106 (C.D. Cal. 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 55 (1st Cir. 1999).  Similarly, the ALJ discounted Dr. Pellicer's opinion because "her actual observations were that of a normally functioning person who . . . demonstrated no acute distress and no problems getting on/off the examination table (which one would expect in someone with chronic severe back pain)."  Tr. 814.  The ALJ used this rationale despite this Court's finding in the 2019 remand order that "one can certainly have limitations on sitting from back or other related problems that do not affect one's ability to climb on and off an exam table."  Tr. 913.

The ALJ also found that Plaintiff did not mention problems with sitting to other providers and indicated that his pain was exacerbated by movement (not sitting still) and concluded that he had made "no mention of problems sitting whatsoever, which was consistent with the negative diagnostic images."  Tr. 814 (citing Tr. 462).  This Court previously explained, however, that the ALJ failed to explain "how he understood that certain abnormalities in the back affect the capacity to sit, while certain ones do not.  He certainly does not reference another's doctor's opinion that evaluates the imaging studies and explains what the results mean in reference to sitting restrictions."  Tr. 913.  Here, the ALJ again referenced negative imaging studies to discount Dr. Pellicer's sitting limitations; he cited to records from 2012 where a provider noted recent x-rays showed "normal lumbosacral alignment."  Tr. 462.  At that visit, however, Plaintiff's provider made no findings concerning his ability to sit, but he did note Plaintiff's reports of 6 to 8 on a scale of 10 intermittent back pain that was exacerbated by walking "and

somewhat by bending forward," and also that "he reports the pain has made his life difficult in that it limits his physical activity at home and for career." *Id*.

Further, the ALJ discounted Dr. Pellicer's opinion because she had not reviewed imaging studies and "did not have the benefit of knowing that x-ray results were negative for both his lumbar and thoracic spinal areas . . . she assumed that his spina bifida caused chronic back pain . . . even though there was no actual abnormal diagnostic imaging to support such self-report." Tr. 815. However, the ALJ determined spina bifida was a severe impairment; and, as noted by this Court in 2019, "in addition to Dr. Pellicer, Dr. Marie Ho also determined Plaintiff had sitting restrictions." Tr. 914 n.6. As discussed *infra*, Dr. Ho ordered imaging at her consultative exam and opined he had limitations in sitting based on findings upon physical exam, history, and reports of back pain, despite negative imaging.

The ALJ also found Dr. Pellicer's opinion Plaintiff could sit less than six hours and needed more frequent breaks vague because she did not define what less than six hours meant and failed to "specify the frequency, type, and duration of the 'more frequent breaks.'" Tr. 816. The ALJ concluded "with frequency and duration lacking a definition as well as her knowledge of Social Security laws being unknown, she may in fact view the normal pattern of breaks every 2 hours as sufficient (vs. frequent breaks meaning additional breaks beyond the normal breaks every 2 hours)." *Id*. The Court already addressed this reasoning in the 2019 order, however, explaining that to the extent the ALJ found it ambiguous, the ALJ had a duty to conduct an appropriate inquiry. Tr. 914. In the 2021 decision, however, the ALJ "acknowledge[d] that the court did not find the May 2018 decision's point regarding vagueness of Dr. Pellicer's opinion persuasive," but again persisted in the same reasoning. Notably, while the ALJ explained "the issue is that a [RFC] must provide a comprehensive finding regarding one's maximum physical capacity . . . warrants the need for specificity, which was not present in Dr. Pellicer's opinion," Plaintiff points out that the ALJ's RFC also lacks specificity, as it

provides a range of hours Plaintiff can stand and walk and does not address his ability to sit at all.  Tr. 807, 816.

The ALJ's finding's that Dr. Pellicer's opinion was due less weight because she failed to evaluate him over eight hours, there was little support or explanation for her opinion within the report, and that it was based on Plaintiff's self-reports, is not supported by substantial evidence.  Further, the ALJ's use of numerous reasons already rejected by this Court to discount Dr. Pellicer's opinion violates the law of the case.

Finally, the 2019 remand order indicated that "to the extent the record was ambiguous about Plaintiff's potential sitting restrictions, the ALJ had a duty to conduct an appropriate inquiry, such as by subpoenaing the physicians who noted sitting restrictions, submitting questions, or allowing supplementation of the record." Tr. 914.  The ALJ also had the option to call a medical expert at the 2021 hearing to interpret medical findings, explain Plaintiff's diagnoses, particularly spina bifida and what if any limitations exist/remain from such a condition, and to provide an opinion of Plaintiff's limitations during the closed period at issue based upon a review of the record in its entirety, including all medical opinions.  Despite having a third opportunity to adequately assess the medical opinion evidence, the ALJ again failed to provide specific and legitimate reasons to discount Dr. Pellicer's opinion, failed to implement the mandate of this Court, as discussed *supra*, and violated the law of the case by using reasoning already rejected by this Court.

### 2.  Dr. Ho

On June 18, 2011 Dr. Ho conducted a consultative exam and rendered an opinion on Plaintiff's level of functioning.  Tr. 396-01.  Dr. Ho diagnosed Plaintiff with spina bifida, with limitations of the mid and lower back, and injury of the right knee and fracture of the tibia with damage of the nerve of the right lower leg, especially of the right ankle and foot.  Tr. 400.  She opined Plaintiff had a

"maximum standing and walking capacity of at least two hours, but less than four hours in an eight-hour workday with normal breaks, due to limitations of his mid and lower back, and right ankle and foot. He walks with a limp." *Id*. She opined he had "a maximum sitting capacity of less than six hours in an [eight]-hour workday, due to limitations of his mid and lower back." *Id*. She opined he could lift and carry 20 pounds occasionally and ten pounds frequently, "due to limitations of his lower back and right lower extremity." *Id*. She opined he should avoid kneeling, crouching, and stooping due to limitations of his mid and lower back, and right lower extremity. Tr. 400.

The 2021 ALJ adopted the 2018 ALJ's findings giving limited weight to Dr. Ho's opinion because she only examined him once and did not review any medical records, and therefore had a limited view of his longitudinal medical history and limited basis for her opinion; she did not provide any explanation of how his back limitations affected his ability to sit; and her opinion he was limited in his ability to sit was inconsistent with the record as a whole, including normal imaging studies of his spine and Plaintiff's reported activities. Tr. 812. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may also discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

Here, Dr. Ho performed a history and physical exam, ordered imaging of Plaintiff's spine and lower extremity, and provided diagnoses and a medical source statement explaining her findings and her opinion of Plaintiff's functional limitations. Tr. 393-01. She noted Plaintiff's report that standing, walking or sitting too long exacerbated his back pain, and explained that upon physical exam she observed objective findings including reduced range of motion in Plaintiff's

back and hips, and Plaintiff's pain with back movements. Tr. 396, 399. She explained she also observed that Plaintiff walked with a limp and had difficulty sitting at the exam; she observed he sat "somewhat uncomfortably and change[d] his position periodically," and that he "was able to get on and off the examination table slowly." Tr. 397. She observed he was unable to tandem walk, toe or heel walk, or hop on the right foot due to low back and right leg pain, he had difficulty squatting due to right foot and ankle pain, and that bending caused mid and low back pain. Tr. 397-398. She noted other objective findings including reduced motor strength in his right foot, ankle and leg, and abnormal muscle bulk and tone and atrophy of his right lower leg, as well as decreased sensation in his right foot. Tr. 399.

While the ALJ concluded Dr. Ho did not review any medical records, including negative imaging of his spine, which limited "her view of his longitudinal medical history and the basis for her opinions," this is incorrect, as records show Dr. Ho ordered imaging of his spine the day of her consultative exam. Tr. 393-95. Further, records show the Agency sent Plaintiff to the consultative exam with Dr. Ho because he had limited medical records, no treating provider, and reported pain from spina bifida and past leg fracture. Tr. 391. Dr. Ho indicated she based her opinion on history and exam performed that day, and she discussed his diagnosis/history of spina bifida, for which she noted he received disability benefits until age 18, and she performed a physical exam with extensive objective findings described *supra*. Tr. 396-00. On this record, the ALJ's finding Dr. Ho's opinion was due less weight because she only examined him once and did not review any medical records including imaging is not a specific and legitimate reason supported by supported by substantial evince to discount her opinion.

The ALJ also discounted Dr. Ho's opinion because it was inconsistent with Plaintiff's activities, which showed unlimited ability to sit. Tr. 812. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's

daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Here, the ALJ found that Plaintiff reported activities "consistent with unlimited ability to sit, such as attending classes," and elsewhere in the decision the ALJ noted Plaintiff reported attending college classes in 2012. Tr. 811-12. This is incorrect, however, as records show Plaintiff reported he had "enrolled in 'OIC' an alternative school for vocation" after he attained his GED. Tr. 462. There is no report of him attending college, and the ALJ seems to confound vocational education, which tends to be practical, with more pedagogic endeavors in a classroom setting. Plaintiff also reported that he was considering applying for disability because "pain ha[d] made his life difficult in that it limits his physical activity at home and for career." *Id*. The ALJ's conclusion that Dr. Ho's opinion concerning Plaintiff's ability to sit was inconsistent with activities that showed "unlimited ability to sit" is not supported by substantial evidence.

Notably, Dr. Ho's opinion Plaintiff had limitations in his ability to sit is also consistent with the opinion of the other consultative examiner, Dr. Pellicer. As noted in the discussion of Dr. Pellicer's opinion, *supra*, the ALJ also failed to address the consistency of the consultative examiners' opinions, including sitting limitations, despite the fact this was pointed out by this Court in the 2019 remand order. Tr. 914.

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discount Dr. Ho's opinion.

As discussed above, the ALJ declined to reassess the medical evidence including Dr. Ho's opinion, despite the instructions of this Court in the 2019 remand order and proceeded to cut and paste the 2018 decision almost in its entirety, including analysis that had already been rejected by this Court in regard to Dr. Pellicer's opinion, and the analysis of Dr. Ho, which is now also found insufficient.

### 3. *Dr. Francis/Listings*

In April 2014, Dr. Francis performed a review of the medical evidence and rendered an opinion on Plaintiff's level of functioning. Tr. 464-66. Dr. Francis opined Plaintiff "equal[led] a combination of 1.04A/11.14/1.02A for a peroneal nerve palsy which is the same thing as a radiculopathy or peripheral neuropathy." Tr. 464. He opined Plaintiff also had "gross anatomic abnormality with ineffective ambulation. He has a foot drop with heel cord tightness on the left."[5] *Id*. He noted "one opinion is that the [Plaintiff] has Charcot Marie Tooth syndrome," and he opined Plaintiff's "diagnoses of Russell Silver syndrome and spina bifida occulta contribute minimally to the equaling." The ALJ gave no weight to Dr. Francis' opinion.

As this claim is remanded for benefits due to errors in assessing the other medical opinions, the court declines to further address this issue, except to note that Dr. Francis was the only physician to review the medical record in its entirety during the closed period at issue, and he noted evidence of additional impairments, such as prior heel fracture, fusion of joints, and early arthritic changes in Plaintiff's right foot, based on imaging performed at a 2012 podiatry consult. Tr. 456. These impairments were not discussed by the ALJ, despite the fact that at the 2012 consult the podiatrist explained that Plaintiff needed "work-up with a neurologist, for possible Charcot Marie Tooth syndrome" and that "he will probably need a complete fusion in the rear foot with bone grafting." *Id*. This Court's instructions on remand in 2019 included that "to the extent the ALJ finds that the record

---

[5] Records indicate Plaintiff has right lower extremity impairment(s) as correctly noted by Dr. Francis in his review of July 2012 EMG/nerve conduction study, which showed nerve damage on the right, along with right heel cord contracture secondary to fracture. Tr. 465. His description of left heel impairment appears to be a typographical/scrivener's error.

supports additional impairments, [the ALJ] shall also reevaluate whether Plaintiff's impairments meet or equal listed criteria." Tr. 915.  In declining to reassess the medical opinions, and repeating the 2018 findings, including the 2018 finding giving no weight to Dr. Francis' opinion, the ALJ also failed to address whether the record supported additional impairments such as those Dr. Francis explained supported his opinion Plaintiff equaled more than one listing.

The ALJ failed to give specific and legitimate reasons to discount the opinions of Dr. Pellicer and Dr. Ho.  As discussed above the ALJ also violated the law of the case and the rule of mandate.

**B.   Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's subjective complaints. ECF No. 13 at 17-20.  It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In the 2018 decision, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence

and other evidence in the record.  Tr. 34.  In the current (2021) decision, the ALJ explained that "having independently reviewed the record, I agree with the [2018 ALJ's] detailed discussion [of Plaintiff's symptom claims] and incorporate it in this decision."  Tr. 811.

Plaintiff contends the 2021 ALJ erred in adopting the prior (2018) ALJ's assessment of Plaintiff's testimony during the closed period at issue because the remand order ordered him to reevaluate Plaintiff's subjective symptom testimony. ECF No. 13 at 3-4; *see* Tr. 915.  Defendant contends as the Court, "despite being invited to do so . . . found no error in the 2018 ALJ's evaluation of Plaintiff's symptom allegations," and because there were no new or material records to consider, the 2021 ALJ reasonably agreed with the previous evaluation and adopted it.

The Court finds that, having determined remand was necessary for the 2018 ALJ's error in failing to provide specific and legitimate reasons for rejecting Dr. Pellicer's sitting restrictions, this Court did not reach the issue of the other medical opinions or Plaintiff's subjective symptom testimony in the 2019 remand order. Tr. 904-15.  As the present case is remanded for errors in the ALJ's assessment of the medical opinion evidence, the Court need not address the parties' argument as to whether the Court instructed the ALJ to reassess Plaintiff's subjective symptom testimony.

The Court will briefly address the issues Plaintiff raised concerning Plaintiff's allegations/symptom claims.

### 1. Inconsistence with Objective Medical Evidence

The ALJ found Plaintiff's allegations were not consistent with the objective medical evidence.  Tr. 27.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

1  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch,* 400 F.3d at 680.

2  However, the objective medical evidence is a relevant factor, along with the

3  medical source's information about the claimant's pain or other symptoms, in

4  determining the severity of a claimant's symptoms and their disabling effects.

5  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

6       Here, the ALJ found, regarding leg impairments, that "the objective findings

7  show that he has some limitations, which are accounted for in the residual

8  functional capacity"; and the "record shows that [Plaintiff's] conditions cause

9  range of motion limitations and occasional weakness, but they do not cause

10  debilitating lower extremity dysfunction." Tr. 808-09.  The ALJ noted Plaintiff

11  had decreased foot range of motion at an exam in April 2012, and "most

12  significantly" at a podiatry consult in June 2012, he had diminished lower leg and

13  calf muscle mass on the right, restricted range of motion in his right foot, and

14  weakness with abnormal gait, and "it was noted that his right leg is about one

15  centimeter shorter than the left." Tr. 809 (citing Tr. 458, 462-63).  The ALJ also

16  noted electromyography (EMG) and nerve conduction testing in July 2012 found

17  "chronic, complete, right distal peroneal nerve loss below the knee with foot drop,"

18  attributed to his past fracture.  Tr. 809 (citing Tr. 451-52).  The ALJ concluded that

19  while these "show that his impairments cause some deficits of functioning . . .

20  subsequent records do not show that [Plaintiff's] conditions equate to disabling

21  limitations," because in June 2012 Plaintiff "again had decreased foot range of

22  motion, but the exam found no point tenderness and no numbness or tingling" and

23  "a December 2013 examination found limited right ankle range of motion but no

24  tenderness."  Tr. 809 (citing Tr. 765, 773).  The ALJ further noted that "while

25  some providers have observed abnormal gait," a May 2014 exam noted normal gait

26  and normal strength, and a December 2014 exam also found limited right ankle

27  range of motion but otherwise normal lower extremity range of motion.  Tr. 809

28  (citing Tr. 760, 762-62).  The ALJ concluded "these findings of range of motion

limitations and intact strength indicate that [Plaintiff's] impairments are not as limited as he claims [sic]." Tr. 809. The ALJ also noted "that lower extremity imaging studies are relatively benign" and "not reflective of a debilitating lower extremity impairment." *Id*.

The ALJ provides no explanation for his conclusions, however, and, as Plaintiff points out, the 2018 findings the ALJ adopted in full failed to discuss relevant evidence. ECF No. 13 at 4-5. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Indeed, findings at the 2012 podiatry consult included that "when he stands, the right foot is completely supinate . . . when he walks he has a steppage gait, with drop foot on the right, and dragging of the foot. He has limited to no range of motion of the subtalar joint on the right." The podiatrist also noted "there is pain over the calcaneocuboid joint and over the sinus tarsi region." Further, while the ALJ noted imaging studies were "relatively benign" he failed to mention x-rays from the 2012 podiatry consult at all, which showed depressed calcaneus (heel) from possible fracture of the calcaneus, "and his heel in a flattened position" as well as "possible fusion" of some of the joints. Tr. 458. The podiatrist assessed him with prior calcaneal fracture, shortening on the right side, nerve damage/nerve lesion and "arthritic changes with possible coalition/fusion right rear foot." *Id*. The podiatrist sent him for further testing, which the ALJ noted showed chronic nerve loss with foot drop, but the podiatrist also explained Plaintiff needed to be worked up for "possible Charcot-Marie-Tooth" disease, and he explained Plaintiff "will probably need a complete fusion in the rear foot with bone grafting." *Id*. There is no discussion of these issues by the ALJ. Here, the ALJ generally discussed Plaintiff's lower extremity issues but failed to discuss relevant related

REPORT AND RECOMMENDATION . . . - 23

findings in relation to his right foot and ankle, which providers including a podiatrist/specialist indicated affected his ability to walk and move his foot.

The ALJ's conclusion that Plaintiff's allegations were inconsistent with objective medical evidence is not supported by substantial evidence.

*2. Other Reasons*

The ALJ gave other reasons to discount Plaintiff's subjective symptom claims. As the case is being remanded for immediate benefits on other grounds, the Court declines to further address this issue.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and not free of harmful error. Plaintiff argues the decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the record is adequate for a proper determination to be made and further development is not necessary.

The Ninth Circuit has set forth a three part standard for determining when to credit improperly discounted evidence as true: (1) the record has been fully developed and further administrative proceedings would serve no purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence in question; and (3) if the improperly discredited evidence were credited as true the ALJ would be required to find Plaintiff eligible for benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

In this case, all three parts of the standard are met. The record has been fully developed in terms of available medical records during the requested closed period

from March 8, 2011 through December 31, 2014, and further proceedings are not necessary. As discussed *supra*, the ALJ failed to provide legally sufficient reasons to reject the medical opinion evidence, despite being given a third opportunity to do so, and the ALJ also failed to follow the 2019 remand order and persisted in reasoning that was already found insufficient by this Court. Therefore, the second prong of the credit-as-true rule is met. The third prong of the credit-as-true rule is satisfied because if the medical opinions were credited as true, the ALJ would be required to find Plaintiff disabled. Finally, the record as a whole does not leave serious doubt as to whether Plaintiff was disabled during the closed period at issue. *See Garrison*, 759 F.3d at 1021.

Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). Here, Plaintiff filed for benefits in 2011, records show barriers to treatment including periods without health coverage, and the case was already remanded twice by this Court. As discussed above, the most recent ALJ failed to follow the 2019 remand order, copied much of the 2018 decision, reused reasoning already rejected by this Court, and in general appears to have taken very little care with the decision, such as misstating Plaintiff's amended onset date by nearly a year throughout the decision. Considering the delay from the date of the application and harmful errors by the ALJ over three decisions, it is appropriate in this case for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

As such, the Court recommends the case be remanded for an immediate calculation of benefits for the requested closed period of disability.

Accordingly, **IT IS HEREBY RECOMMENDED** Plaintiff's Motion for Summary Judgment, **ECF No. 13**, be **GRANTED**; Defendant's Motion for Summary Judgment, **ECF No. 14**, be **DENIED**; and the District Court Executive enter **Judgment for Plaintiff REVERSING and REMANDING** the matter for an **immediate calculation of benefits**.

### OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within fourteen (14) days after receipt of the objection. Attention is directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and to provide copies to counsel.

DATED August 18, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION . . . - 27